IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| THEOTIS T. JOHNSON, #1092216, )<br>)<br>Plaintiff, )<br>) Civil Action No. 7:09cv00300<br>v. )<br>)<br>JOHN JABE, <u>et al.</u>, ) By: Hon. Michael F. Urbanski<br>) United States Magistrate Judge<br>Defendants. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Theotis T. Johnson, also known as Prince Just Foundation Allah, ("Johnson"), brings this action pro se pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Johnson alleges that Virginia Department of Corrections ("VDOC") officers John Jabe, Larry Huffman, R.C. Mathena, F. Bailey, Sgt. M. Hatfield, T. Higgins, D. Vass, Kathleen Bassett and K. Price (collectively "defendants") violated his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et seq. He further alleges that defendants violated his rights to due process and equal protection under the Fourteenth Amendment.

Eight of the ten defendants have collectively filed a Motion for Summary Judgment. The remaining two defendants have incorporated that Motion's grounds by reference into their own Motions for Summary Judgment. The issues in this case have been fully briefed and the matter is ripe for disposition. For the reasons stated herein, it is **RECOMMENDED** that defendants' Motions for Summary Judgment (Dkt. #'s 16, 34, 39) be granted.

## I. Facts

**<u>Plaintiff's Allegations</u>**

Johnson is a Virginia State inmate incarcerated in a VDOC facility. Dkt. # 1 at 3.[1] Johnson has been a member of the Nation of Gods and Earths ("NGE") for approximately eight years. Id. NGE is referred to as the "Five[]Percenters,"[2] and is classified as a gang and security threat group ("STG"). Id. at 3. Thus, it is treated differently from other Islamic groups such as the Nation of Islam, the Moorish Science Temple of America and the World Community/Sunni Community. Id. Because of NGE's classification, VDOC bans NGE materials. Id. at 6.

According to the verified complaint, NGE was founded by Clarence 13X Smith, known to NGE members as Father Allah, when he left the Nation of Islam Temple # 7. Id. at 7. NGE is a separate way of life from the Nation of Islam, though the two share some lessons and teachings. Id. "The N.G.E. teaches that God is the original asiatic blackman . . . ." Id. "The N.G.E. teaches that if you are not God then you are a devil." Id. at 19. NGE allows individuals to reach knowledge, wisdom and understanding through the mathematics of life. Id. at 8. NGE is not a gang, cult or hate group. Id. at 9. Johnson has grown as a person and become more educated because of his participation in NGE. Id. at 11. However, he feels that VDOC's categorization of NGE as an STG "ultimately stagnates [his] mental growth . . . ." Id.

On September 23, 2007, prison officials confiscated a compact disc from Johnson that bore the universal flag of NGE. Id. at 4-5. The packaging was removed from the compact disc such that Johnson could not return or exchange it. Id. at 5. That same day, a prison official

---

[1] Plaintiff's page numbers are inconsistent. The numbers cited are those printed at the bottom of the pages of the Complaint.

[2] Johnson inconsistently contends that (1) the Five Percenters and NGE are separate groups, and (2) refers to Five Percenters as being part of NGE. The undersigned uses NGE and Five Percenters interchangeably.

confiscated a booklet about the history of Clarence 13X Smith that came with the compact disc. Id.

Johnson appealed the confiscation of his materials though the inmate grievance system. Id. at 6. The removal was upheld because of VDOC's zero tolerance policy for materials pertaining to gangs. Id. at 5-6.

Johnson additionally sought recognition of NGE as a religion. Id. at 12. He initially was denied the forms because he would not identify the group for which he sought recognition. Id. at 12-13. After filing a grievance on this issue, he was given the forms to request religious recognition. Id. at 14. Johnson says he was informed "'[t]hat if I am asking for a [faith] group that was previously disapproved[;] it would not even be processed." Id. at 13. However, he also claims that prison officials showed him a list of disapproved religions and that NGE had not been disapproved. Id. Yet, Johnson additionally submits a prison grievance form in which a prison official listed the Five Percenters as having been disapproved. Exhibit C to Dkt. # 31.

Thirteen days after filing his grievances and recognition forms, Johnson's cell was searched and he received a charge for possessing gang related materials. Dkt. # 1 at 15. The search occurred while Johnson was attending religious services. Id. Forty-three pages of material were confiscated; however material regarding some religious lessons was returned. Id. at 15-16. Additionally, eleven pages that were not gang related were returned after Johnson filed a grievance. Id. at 16.

On August 4, 2008, Johnson asked for information about the status of his request for recognition of NGE. Id. at 20. There was some confusion as to whether Johnson's request was sent into the correct administrative channel. Id. Johnson then submitted a grievance. Id. at 21. Johnson claims that he never received a response and that he was told that he would not be

3

informed as to whether his request for recognition was denied. Id. at 20-21. However, he was also told that the Faith Review Committee met and disapproved NGE as a religion on November 30, 2007. Id. at 23-24. Indeed, the record includes a memorandum noting that the Faith Review Committee denied NGE recognition. Exhibit 31 to Dkt. # 1. That committee had received an additional request from Johnson's institution and again denied NGE status on February 28, 2009. Id.

Johnson has additionally filed the affidavit of another inmate. Dkt. # 30. That inmate ordered a NGE compact disc while in a VDOC institution. Id. at 1. He was allowed to keep it until a shakedown. Id. Then, the disc was confiscated as gang related material. Id.

**Defendants' Responses**

VDOC has a zero tolerance policy for gang activities, as defined by policies under Virginia Code § 18.2-46.1 Exhibit 1 to Dkt. # 17 at 2. Gang activities such as work refusals and stoppages, inmate recruitment, drug distribution and money laundering through inmate accounts pose risks to VDOC security. Id. Indeed, gang leaders have conspired while in prison to execute criminal activities outside of prison. Id. Recently, a VDOC gang leader was sentenced to forty-five years for soliciting the murder of an individual outside of prison. Id. For these reasons, VDOC prohibits all inmates from joining, recruiting for, associating with or participating in any gang. Id. Further, VDOC prohibits all inmates from possessing any items that indicate gang involvement. Id.

NGE, also called Five Percenters, is nationally identified as a STG by entities including the Department of Homeland Security. Id. at 3. The leader of the New Black Panther Party, a black separatist group, has acknowledged that the Five Percenters are a gang and has invited

4

them to join his organization. Id. The Five Percenters are an off-shoot of the Nation of Islam and in publications they insist that they are not a religion. Id. at 3-4.

VDOC has classified NGE as a gang and does not recognize it as a religion. Id. at 3. This determination was based on NGE's participation in small riots, threats from NGE members to staff, NGE's recruitment of other gang members including Bloods and Crips and its usurpation of authorized prison religious services. Id. NGE has been known to communicate via code. Id. It stresses black supremacy, referring to Allah as Arm-Leg-Leg-Arm-Head, and claiming that the enlightened black man is ultimately god. Id. at 3-4.

VDOC's position is that NGE is a gang or hate group like the Ku Klux Klan, the World Church of the Creator, the New Black Panther Party and other racially motivated supremacy groups. Id. at 4. As such, VDOC's Gang Management Unit does not permit publications and other materials from NGE in VDOC facilities. Id.

Johnson wanted to request recognition for NGE as a religion. Exhibit 1 to Dkt. # 40 at 2. He initially was denied forms. Id. at 2; see also Attachment B to Dkt. # 40. However, after Johnson raised the denial of forms in a grievance, prison officials provided him with forms. Id.

## II. Discussion

To establish a violation of 42 U.S.C. § 1983, a plaintiff must show that a person acting under the color state law deprived the plaintiff of rights guaranteed by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42, 48 (1988).

Johnson challenges VDOC's alleged ban on NGE materials, its confiscation of his materials and its alleged refusal to allow Johnson to seek religious recognition of NGE. He argues that these actions violate the Free Exercise Clause of the First Amendment, RLUIPA, and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Dkt. # 1 at 1.

Plaintiff additionally argues that another inmate was allowed to keep materials that Johnson was not allowed to keep and that defendants retaliated against him for seeking recognition of NGE as a religion. Id. at 4, 15. Plaintiff seeks declaratory, monetary and injunctive relief.[3] Defendants, in contrast, argue that NGE is not a religion and that it is a dangerous gang.[4]

Federal Rule of Civil Procedure 56(c)(2) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment under Rule 56, the court must view the record as a whole and draw reasonable inferences in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986).

Additionally, the district courts have authority under the Prison Litigation Reform Act, ("PLRA"), 28 U.S.C. § 1915(e)(2), to identify and dismiss a complaint or portion of a complaint filed by a prisoner against a governmental officer when the prisoner's claim "is frivolous, malicious, or fails to state a claim upon which relief may be granted. . . ."[5] "Legally frivolous claims are based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994)

---

[3] Money damages are not available under RLUIPA against officials acting in their official capacity. Madison v. Virginia, 474 F.2d 118 (4th Cir. 2006).

[4] Defendants do not assert the defenses of absolute or qualified immunity, and accordingly the undersigned does not discuss them here.

[5] Defendants do not directly address plaintiff's Equal Protection and Due Process Clause claims. However, because they seek dismissal of the entire Complaint, and because it is clear that Johnson's allegations do not state a claim upon which relief may be granted, the undersigned recommends dismissal of the entire action.
Defendant Price presents separate grounds arguing that she was insufficiently involved in the matters at issue to be held liable under § 1983. Johnson concedes in reply, Dkt. # 42, that Price was not involved in any of the alleged harms except for the alleged interference with Johnson's due process rights. There, Johnson alleges that Price was personally involved. As an alternative holding, the undersigned recommends that all claims against Price, except for the procedural due process claim regarding religious recognition of NGE, be dismissed. As to that remaining claim, there is a genuine issue of material fact as to Price's involvement. However, that claim fails for other reasons.

(internal quotations omitted). Additionally, frivolous, in the context of this provision, "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Thus, judges possess the "unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factional contentions are clearly baseless." Id. at 327.

In reviewing prisoner cases, it is not the role of the district court to interpret the complaint to state additional claims or to "supply an allegation of injury different from the injury specifically alleged by [the plaintiff]." Farabee v. Feix, 119 F. App'x 455, 458 (4th Cir. 2005). Though courts are to construe pro se cases broadly, "[d]istrict judges are not mind readers. Even in the case of pro se litigants, they cannot be expected to construct full blown claims from sentence fragments . . . ." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). See also Long v. Horton, 865 F.2d 855 (4th Cir. 1988) (unpublished table decision) (district courts need not "construct" claims from "obscure references" and appellate courts should not consider those references on appeal).

In this matter, Johnson has filed a verified complaint, pursuant to 28 U.S.C. § 1746. A verified complaint, setting forth specific facts based on personal knowledge, may be treated like an affidavit at summary judgment. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, the court is not required to treat Johnson's assertions of law or application of law to fact, as true. Because the claims Johnson puts before the court cannot survive these standards, the undersigned recommends that his claims be dismissed and the defendants' Motions for Summary Judgment be granted.

## A. First Amendment

Johnson alleges that his First Amendment right to freely exercise his religion was impermissibly burdened by VDOC's designation of NGE as a STG and the ban on NGE materials. Defendants argue that NGE is not a religion, but is rather a "way of life" and thus is not protected by the First Amendment.

The Free Exercise Clause of the First Amendment is applicable to the states by virtue of the Fourteenth Amendment. Employment Division v. Smith, 494 U.S. 872, 876-77 (1990). It provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. I. However, a prisoner does not enjoy the full range of freedoms as those not incarcerated; rather state action violates a prisoner's religious rights if it burdens a prisoner's constitutional rights and is not reasonably related to a legitimate peneological interest. Turner v. Safley, 482 U.S. 78, 89 (1987); accord O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987).

In Turner, the Court identified a number of factors to consider as to whether a matter is reasonably related to a legitimate peneological interest. Turner, 482 U.S. at 89. These factors are whether there is (1) "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it", (2) if there are "alternative means of exercising the right that remain open to prison inmates", (3) the impact of "accommodation of the asserted constitutional right ... on guards and other inmates, and on the allocation of prison resources generally", and (4) whether "ready alternatives for furthering the governmental interest [are] available". Beard v. Banks, 548 U.S. 521, 529 (2006) (quoting Turner, 482 U.S. at 89). In applying the Turner factors, the court must "respect the determinations of prison officials." United States v. Stotts, 925 F.2d 83, 86 (4th Cir. 1991). Further, the plaintiff bears the ultimate

burden of establishing that a prison regulation is unconstitutional. See Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1999).

For the purposes of evaluating NGE claims under the First Amendment, the Fourth Circuit Court of Appeals has declined to decide whether NGE is a religion. See In Re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 468 (4th Cir. 1999). Instead, the court has asked whether restrictions on the Five Percenters are constitutional by virtue of their relationship to prison security. Id.

Considering the first Turner factor, plaintiff has not carried his burden. The challenged policies further the prison's legitimate peneological interest in preventing gang violence. Defendants have submitted evidence showing that the Department of Homeland Security has identified the Five Percenters as an STG. The ban on NGE materials is not specific to NGE; rather VDOC bans all gang paraphernalia. This serves the legitimate interest of making it more difficult for gang members to associate.

Johnson contends that NGE is not a gang, but a religion. However, Johnson's argument is irrelevant because both RLUIPA and the Turner factors presuppose that a prison may legitimately burden a religion when it also poses a security risk. In conclusory fashion, Johnson urges that NGE is peaceful. Nothing Johnson has filed, however, rebuts defendants' assertion that NGE has been involved in acts of violence in Virginia institutions. Thus defendants have shown that their classification of NGE as a gang passes muster under the first step of the Turner test. Similarly, in banning NGE materials, "officials furthered a neutral and legitimate security interest in eliminating all indicators of STG association in order to limit gang influence" in the prison system. Holley v. Johnson, 7:08cv00629, 2010 WL 2640328, at *4 (W.D. Va. Jun. 30, 2010) (VDOC ban of NGE materials does not violate inmate's First Amendment rights).

Applying the second Turner factor, it is clear that plaintiff was not deprived of all means of religious expression. In spite of NGE's designation as a STG and VDOC's ban on all gang materials, Johnson's verified complaint indicates that he was able to attend religious services. He has continued to participate in prison education programs, as he has done in the past, in order to fulfill the NGE tenet of self-improvement.

As to the third factor, the record demonstrates that accommodation of further NGE practice would negatively impact others. Lifting a ban on NGE materials could aid gang violence, by allowing members to identify one another and further their association. The Fourth Circuit has held that "increased freedom for the Five Percenters would come 'only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike'" . . . . In re Five Percenters, 174 F.3d at 470 (quoting Turner, 482 U.S. at 92-93). For this reason, the accommodations urged by Johnson would prove problematic.

Defendants also satisfy the fourth factor. Based on the evidence, it does not appear that there are any ready alternatives to the outright ban on NGE materials and activities. Plaintiff proposes two alternatives, but both are unworkable because both urge individual assessment of dangerousness. First, Johnson argues that NGE materials that do not espouse violence should not be banned. However, the danger associated with NGE materials is not that they necessarily espouse violence, but rather that they allow gang members to identify one another. As such, NGE identifying possessions pose a threat to prison security, just as the insignia of the Bloods or Crips pose a threat. See Holley, 2010 WL 2640328, at *6 (reaching this conclusion under heightened scrutiny of RLUIPA). Second, Johnson argues that Five Percenters are not necessarily synonymous with NGE and that the Five Percenters are not dangerous. Johnson's argument fails because he equivocates on this point; in fact, he notes that the doctrine of the Five

Percent can be found in NGE. Further, he does not provide any basis for the assertion that Five Percenters are a different group than NGE. In contrast, the defendants have submitted an affidavit stating that the two are synonymous and that NGE has been involved in violent incidents. To the degree Johnson is really urging that VDOC assess the dangerousness of each individual, his argument also fails. The logic of gang prevention requires that VDOC be able to treat gang members as dangerous because of their identification with gangs. Accord In Re Five Percenters, 174 F.3d at 470. Requiring prison officials to "act only after a demonstration of individual dangerousness would deprive them of the all-important option of prevention. The threat of violence [there] was a group threat, and prison administrators were entitled to address it in those terms." Id. Accordingly, the undersigned recommends that the defendants' Motions be granted as to Johnson's Free Exercise Clause claims.[6]

### B. RLUIPA

Johnson alleges that his religious rights under RLUIPA have been violated because of NGE's classification as an STG and its attendant ban on NGE materials. Under RLUIPA, state governments may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability. This remains the case, unless the government shows that the burden is the least restrictive means of reaching a compelling interest. 42 U.S.C. § 2000cc-1(a). Congress has defined "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

---

[6] This recommendation is in line with the findings of prior cases in this district and circuit. See Holley, 2010 WL 2640328, at *1; Cartwright v. Meade, 7:08cv250, 2008 WL 2944668 (W.D. Va. Jul. 31, 2008) (confiscation of prisoner's Five Percenter materials, which were deemed STG-related, did not violate his right to free exercise); Talbert v. Jabe, 7:07cv450, 2007 WL 3339314 (W.D. Va. Nov. 8, 2007) (dismissing prisoner's claim that the Five Percenters were improperly classified as an STG); see also Harrison v. Watts, 609 F. Supp. 2d 561(E.D. Va. 2009). But see Versatile v. Johnson, 3:09cv120, 2009 WL 5206437, at *6 (E.D. Va. Dec. 31, 2009) (finding state actor evidence insufficient to carry burden under RLUIPA at summary judgment as blanket ban on NGE materials and claim that NGE a religion).

Courts have defined a "substantial burden" as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quoting Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981)). By invoking the language of strict scrutiny, Congress did not intend for courts to substitute their own judgment for that of prison administrators. Cutter v. Wilkinson, 544 U.S. 709, 723 (2005). However, "a court should not rubber stamp or mechanically accept the judgments of prison administrators," rather a court should give administrators' judgments "due deference. . . ." Lovelace, 472 F.3d at 190.

Defendants argue that they are entitled to summary judgment on plaintiff's claims under RLUIPA, because the restrictions on NGE further the compelling governmental interest of security in prisons, and because they lack alternative means to prevent gang activity. Defendants further assert that the analysis of these facts under RLUIPA is substantially similar to the First Amendment analysis. Even if plaintiff's religious rights were violated, the prison's interest in maintaining order and security in prison renders its application of the STG policy to plaintiff constitutional.

Assuming that Johnson's practices are religious practices and that they were substantially burdened, his claim still fails because the defendants have made the requisite showing. Applying VDOC's ban on all gang materials is the least restrictive method furthering a compelling government interest. It inhibits prisoners from identifying one another as members of a particular gang. This serves the compelling interest of disrupting gang associations, thereby thwarting prison violence and preventing criminal activity. This is the least restrictive means, because it deprives individuals of an outward sign of gang loyalty, while inmates retain the ability to pursue non-violent aspects of the NGE way of life through private study of non-NGE

12

identified materials and prison education programs. The defendants have submitted an affidavit to this effect and thereby have carried their burden under RLUIPA. Again, Johnson disputes the assertions that NGE is a gang. But as in the First Amendment analysis, his arguments are vague and conclusory and thus cannot overcome the defendants' showing. Accordingly, the undersigned recommends that Johnson's claims under RLUIPA be dismissed because of VDOC's legitimate interest in preventing the spread of gang violence.

Notably, this district recently found that VDOC has a compelling interest in limiting NGE's influence and growth because of "longstanding, severe security problems" posed by the Five Percenters. Holley, 2010 WL 2640328, at *6. The plaintiff in Holley argued that confiscating his NGE materials was not the least restrictive means because the content of the documents did not advocate violence or otherwise pose a security threat. The court rejected that argument because many of the seized documents bore the NGE emblem and were "closely identified with the Five Percenters group, just as the color-coded clothing worn by well-known city gangs, like the Bloods and the Crips, indicates membership in, or support for, those gangs." Id. The threat was not in the substance of NGE materials like the Supreme Mathematics, but rather in the suggestion that the defendant was affiliated with a known STG. Allowing possession of NGE literature would have undermined VDOC's efforts in eliminating signs of gang membership, thereby hampering VDOC's means of preventing gang activity in prison. Id.

### C. Equal Protection

The core of Johnson's allegations raises a Free Exercise Clause violation. However, Johnson also generally asserts that the classification of NGE as an STG and the ban on NGE materials constitute equal protection violations. Further, Johnson asserts that VDOC violated his right to equal protection by confiscating a compact disc that another inmate was allowed to

possess, and by allowing members of the Nation of Islam freely to practice their religion and to possess texts which are substantially similar to NGE's.

In order to establish a violation of equal protection, a plaintiff must show that he was treated differently from those "similarly situated," and that the disparate treatment was the result of intentional discrimination.  See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).  In analyzing the alleged discrimination, the undersigned must apply a deferential analysis rather than heightened scrutiny.  Id. at 654-55; accord Turner, 482 U.S. at 84-85.  A "'prison regulation [that] impinges on inmates' constitutional rights ... is valid if it is reasonably related to legitimate peneological interests' and not an exaggerated response to a particular concern." Morrison, 239 F.3d at 655 (quoting Turner, 482 U.S. at 89).  In making such a determination the court is again to apply the Turner factors.

Johnson has not set forth facts showing that the Nation of Islam is similarly situated to NGE.  As such, his equal protection claim fails.  "There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence."  In Re Five Percenters, 174 F.3d at 471 (quoting Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 136 (1977)).  Johnson has not alleged that the Nation of Islam is a STG.  Thus the differentiation in treatment between NGE and the Nation of Islam is rationalized by NGE's STG status.

For the same reasons that VDOC's classification of NGE as an STG and the attendant zero tolerance policy pass muster under the Free Exercise Clause and RLUIPA, these state actions do not offend the Equal Protection Clause.  The defendants have a legitimate interest in preventing gang violence.  This ban applies to all groups labeled STG, not simply NGE.  Thus, NGE is not treated differently than similarly situated groups.  Accordingly the undersigned

14

recommends that this claim be dismissed. See Holley v. Johnson, 2010 WL 2640328, at *6-7; In re Five Percenters, 174 F.3d at 471.

Additionally, Johnson's claim regarding the compact disc confiscation lacks merit because Johnson does not show that the other inmate was similarly situated. Johnson acknowledged that his compact disc bore the universal flag of NGE. However, he makes no such allegation as to the other inmate's compact disc. Further, Johnson indicates that the other inmate possessed the compact disc for a time and that it was later taken from the inmate. Given that the other inmate eventually lost possession of the compact disc, this does not provide a model for what Johnson wants. Accordingly, the undersigned recommends that these claims be dismissed.

### D. Due Process

Johnson alleges violations of due process as to VDOC's decision that NGE is a STG. He further claims that the compact disc confiscated from him was damaged and he could not return it. Johnson additionally challenges the procedures available to him to seek religious recognition of NGE and finally argues that defendants retaliated against him for seeking religious recognition. The undersigned recommends that these claims be dismissed because Johnson has not asserted claims upon which relief can be granted, and his claims are factually and legally deficient under the PLRA.

Due process protections bar the government from depriving an individual of life, liberty or property without due process of law. U.S. Const. amend. XIV, § 1. Notably, when a person is "lawfully convicted and confined to prison, he loses a significant interest in his liberty for the period of his sentence." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Thus, prisoners have a liberty interest cognizable under procedural due process where the prison "imposes [an]

atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Whether procedures in place are adequate is determined by considering:

> (1) the private interest affected by the government action; (2) the risk of erroneous deprivation through the procedures used and the probable value, if any, of alternative or additional procedures; and (3) the state's interest, including the function involved and the fiscal and administrative burdens of added safeguards.

Lovelace, 472 F.3d at 202. Further, where a plaintiff brings a § 1983 claim alleging a "deprivation" of life, liberty or property in violation of the Fourteenth Amendment, he necessarily must show that the defendant(s) acted deliberately, such that there was an "affirmative abuse of government power." Daniels v. Williams, 474 U.S. 327, 330 (1986); see also Pink v. Lester, 52 F.3d 73, 75 (4th Cir. 1995).

Johnson's claims stem from the confiscation of his materials. However, he was not deprived of property within the meaning of the Fourteenth Amendment when his compact disc and papers were confiscated, because inmates do not have a right to possess contraband. Hanvey v. Blankenship, 631 F.2d 296, 297 (4th Cir. 1980). The materials at issue were properly categorized as contraband, given the undersigned's recommendations regarding VDOC's classification of NGE and VDOC's zero tolerance policy for gang related materials.[7] Thus, Johnson has not made out a due process claim. See Holley, 2010 WL 2640328, at *6.

Johnson's complaints regarding his ability to seek classification of NGE as a religion fail because he was, in fact, able to seek recognition. Johnson alleges that he was denied due process because he was initially denied the require forms. However, the record also demonstrates that

---

[7] Further, Johnson's own allegations show that he was able to contest the confiscation of other materials and that officials actually returned some materials to him. Thus, he does not show any inadequacy in the grievance procedures available to him. Rather, Johnson simply disagrees with VDOC's policy of denying inmates NGE material. This disagreement does not rise to the level of a constitutional harm.

the prison officials found error in the denial of forms to Johnson. Indeed, Johnson was able to request religious recognition of NGE. Any mistakes as to timing or process were not of a constitutional dimension.

Johnson's major complaint with the process for seeking religious recognition at VDOC turns on his allegation that he was told he would not be informed of the outcome of his request. However, Johnson received a memorandum informing him that the Faith Review Committee disapproved the request for religious recognition sent from Johnson's institution. Further, Johnson takes the position that VDOC has refused to recognize NGE as a religion, thereby indicating that he in fact knows the decision of the Faith Review Committee.

Weighing the due process factors, Johnson's private interest in his religion is important. However, the record does not reveal deficiencies or any error in the prison process. Further, the prison has a great interest in whether groups like NGE are recognized in the prison setting as a religion, given that they may also be gangs and pose security threats. Given these factors, nothing in the record indicates that the process afforded Johnson was inadequate.

Johnson additionally alleges that officials retaliated against him for seeking religious recognition by searching his cell. In order to state a retaliation claim, the "plaintiff must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). An inmate must present more than conclusory allegations of retaliation. Id. at 74. "Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation." American Civil Liberties Union, 999 F.2d 780, 785 (4th Cir. 1993). Thus, Johnson must show "adverse impact" on his due process rights in order to make out a claim for retaliation. Id. Further, an inmate must allege facts showing that his exercise of

constitutional rights was a substantial factor motivating the retaliatory action. See, e.g., Hughes v. Bedsole, 48 F.3d 1376, 1386 n.11 (4th Cir. 1995). "Temporal proximity" between the inmate's protected activity and the allegedly retaliatory, official action "is simply too slender a reed on which to rest" a claim. Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993).

Johnson's claim fails because he cannot show adverse impact on his due process rights and he has not sufficiently pleaded facts showing retaliation. As previously explained, Johnson was not deprived of his procedural due process rights. Further, the search of his cell and the confiscation of contraband were not in of themselves wrongful. This failure to allege an actual wrong is fatal to Johnson's retaliation claim. However, the claim additionally fails because Johnson has not set forth any facts demonstrating that his exercise of due process rights was a substantial factor behind the search. Rather, Johnson has merely alleged that he:

> believes that as a result of him filing the complaints and grievances to even obtain the paperwork to file for recognition of his chosen way of life, as well as what the request contained pertaining to Johnsons' way of life, that he was targeted to have his cell "shook down", []which resulted in Johnson receiving a disciplinary charge for . . . "gang related material."

Dkt. # 1 at 15. Johnson additionally asserted that this search took place "approximately thirteen days" after he submitted his paperwork. Id. Thus Johnson's Complaint merely asserts temporal proximity and the conclusory belief that the only way prison officials could have known he had the materials was that he may have referenced them in his request. This is a wholly speculative claim. Accordingly, the undersigned recommends that this claim, too, be dismissed.

### III. Conclusion

In conclusion, the undersigned **RECOMMENDS** that this action be **DISMISSED** and that the defendants' Motions be **GRANTED**. The Clerk is directed to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Plaintiff is reminded that

pursuant to Rule 72(b), he is entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is directed to send copies of this Report and Recommendation to plaintiff.

Entered: August 23, 2010.

/s/ Michael F. Urbanski

Michael F. Urbanski
United States Magistrate Judge