CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 30 2010

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| THEOTIS T. JOHNSON, #1092216, | ) | |
| | ) | Civil Action No. 7:09cv00300 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JOHN JABE, et al., | ) | |
| | ) | By: Samuel G. Wilson |
| Defendants. | ) | United States District Judge |

Plaintiff Theotis T. Johnson, also known as Prince Just Foundation Allah ("Johnson"), an inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983. The court has jurisdiction over this case pursuant to 28 U.S.C. § 1343. Johnson alleges that Virginia Department of Corrections ("VDOC") officers John Jabe, Larry Huffman, R.C. Mathena, F. Bailey, Sgt. M. Hattfield, T. Higgins, D. Vass, Kathleen Bassett, and K. Price (collectively, "defendants") violated Johnson's rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq., as well as his rights to due process and equal protection under the Fourteenth Amendment. The defendants moved for summary judgment, and the court referred their motions to the United States Magistrate Judge for a report and recommendation. Relying principally on the defendants' contention that Johnson is a member of an organization permissibly classified as a security threat group ("STG"), the Magistrate Judge recommended that the defendants' motions for summary judgment be granted, and the matter is currently before the court on Johnson's objection to that recommendation. Although the court finds the Magistrate Judge's report to be both thoughtful and thorough, the court finds that the defendants have not sufficiently particularized the evidence they rely on to support the designation of the organization as an STG. Because of the ramifications of

designating an organization as an STG, the Court finds it appropriate to require further factual development and will resubmit Johnson's First Amendment and RLUIPA claims to the Magistrate Judge for that purpose as well as an intertwined equal protection claim that depends on the same factual development. However, the court grants defendant's' motions for summary judgment as to Johnson's remaining claims for the reasons given by the Magistrate Judge.

I.

The Magistrate Judge's Report and Recommendation details the procedural history and facts of the case, and the court recounts here only those it considers necessary for an understanding of the court's decision. First, the court sets forth the facts presented regarding the VDOC's decision to designate The Nations of Gods and Earths ("NGE") as a gang and an STG. Next, the court outlines Johnson's factual allegations underlying the claims brought forth in his complaint and discusses the case's relevant procedural history.

A.

Johnson is an inmate incarcerated in a VDOC facility. Johnson has been a member of NGE, sometimes also referred to as the "Five Percenters,"[1] for approximately eight years. While reluctant to use the term "religion" to describe NGE, Johnson nonetheless argues that NGE's teachings are religious in nature. (Pl.'s Objections 5.)

---

[1] Johnson argues that the term Five Percenters is a "sociological term," and does not identify a particular group like NGE does. Thus, Johnson contends that the terms should not be used synonymously. (Pl.'s Objections to the Report & Recommendation ("Pl.'s Objections") 3.) However, Johnson concedes that the term "Five Percenter" is commonly used to describe members of NGE. (Id. 4); see also (Defs.' Mot. for Summ. J. of January 26, 2009 ("Defs.' Mot.") 1.) Therefore, like the Magistrate Judge, the court uses NGE and Five Percenters interchangeably.

2

The VDOC refuses to recognize NGE as a religion, and instead considers NGE to be a gang and an STG. In support of its decision to categorize NGE as such, the defendants rely on an affidavit submitted by Gary J. Clore ("Clore"), the Manager of the VDOC's Gang Management Unit. According to Clore's affidavit, the VDOC considers NGE a gang, and not a religion, for the following reasons:

> - This gang has been disruptive to the safe, secure, and orderly operation of VDOC facilities on more than one occasion. They have participated in work stoppages and small riots, have threatened staff, have recruited other offenders for their gang and have taken over authorized religious services at prisons.
> - This gang consistently recruits other gang members (i.e. Bloods, Crips, etc.) to join their gang.
> - While this gang claims to worship Allah, 'Allah' is a disguise meant to mislead outsiders. Allah does not identify a supreme being. This gang identifies Allah as Arm, Leg, Leg, Arm, Head. Therefore, they describe Allah as being the "enlightened" black man, who is in fact a god.
> - This gang is a separatist hate group. They stress black supremacy throughout their lessons.

(Defs.' Mot., Ex. I ¶ 9.) Clore further notes that the Department of Homeland Security has acknowledged that the Five Percenters are an STG, (id. ¶ 9), a fact which Johnson contests. (Pl.'s Objections 8.) The defendants also assert that the "Five Percenters have time and time again been recognized as presenting a serious security risk inside . . . prison walls." (Defs.' Mot. ¶ 8.) However, Clore does not provide any specific examples of NGE members engaging in institutional violence or other gang-like activity.

The VDOC claims it has a zero tolerance policy for what it considers gang activities, which are defined by policies promulgated under Virginia Code § 18.2-46.1.[2] The VDOC argues

---

[2] Section 18.2-46.1 defines "criminal street gang" as:
any ongoing organization, association, or group of three or more persons, whether formal or informal, (i) which has as one of its primary objectives or activities the commission of one or more criminal activities; (ii) which has an identifiable name

3

that gang activities, like those described in Clore's affidavit, pose significant risks to prison security. The VDOC contends that even imprisoned gang leaders are a threat to commit crimes outside prison walls. (Defs.' Mot., Ex. I ¶ 6.) For these reasons, the VDOC prohibits any inmates from "owning, creating, possessing, or passing to others any correspondence, documents, drawings, or symbols of any type that might indicate gang involvement." (Id.) Given the VDOC's determination that NGE is a gang and an STG, inmates are banned from possessing any items that contain NGE insignias or symbols.

## B.

Johnson claims that on September 23, 2007, prison officials confiscated a compact disc belonging to Johnson that bore the universal flag of NGE. During this process, the prison officials removed the disc's packaging, making it impossible for Johnson to return or exchange the item. Prison officials also confiscated a booklet that came with the disc, which contained information about the founder of NGE. Johnson appealed the confiscation of the disc and the booklet through the inmate grievance system, but the VDOC upheld the prison official's actions because of the VDOC's professed zero tolerance policy toward gang related materials. Johnson also alleges that another inmate had ordered and received a NGE compact disc while in a VDOC institution. According to Johnson, the other inmate was allowed to keep the disc until prison officials later confiscated the disc in a shakedown.

---

        or identifying sign or symbol; and (iii) whose members individually or collectively have engaged in the commission of, attempt to commit, conspiracy to commit, or solicitation of two or more predicate criminal acts, at least one of which is an act of violence, provided such acts were not part of a common act or transaction.
VA. CODE ANN. § 18.2-46.1 (West 2010).

Johnson also sought recognition for NGE as a religion. Johnson was initially denied access to the forms necessary to make such a request because Johnson failed to identify the group for which he sought recognition. However, after Johnson filed a grievance protesting the prison officials' decision to deny Johnson the forms, the prison officials reversed their position and gave Johnson the required forms.

After Johnson submitted his request to have NGE recognized as a religion, Johnson claims he was told that he would not be informed as to whether his claim was approved or denied. However, Johnson also acknowledges that he was told at that time that the Faith Review Committee had previously met and disapproved NGE as a religion on November 30, 2007. The Faith Review Committee later received Johnson's additional request and again denied NGE status as a religion on February 28, 2009.

Thirteen days after Johnson filed his grievances and recognition forms, prison officials searched Johnson's cell and seized forty-three pages of material. Officials returned to Johnson some material regarding religious lessons, as well as eleven pages of material the officials deemed not gang related.

The defendants moved for summary judgment on Johnson's claims pursuant to Federal Rule of Civil Procedure 56. After reviewing the defendants' submissions and Johnson's responses, the Magistrate Judge issued a report on August 24, 2010, recommending that the court grant all of the defendants' motions. On September 13, 2010, Johnson filed his objections to the Magistrate Judge's Report and Recommendation. In accordance with 28 U.S.C. § 636(b), the court now reviews the Report and Recommendation, Johnson's objections, and the pertinent portions of the record *de novo*.

## II.

Johnson first argues that the VDOC's designation of NGE as an STG, and the VDOC's subsequent ban on NGE materials, impermissibly interferes with his rights to freely exercise his religion under the First Amendment and RLUIPA.[3] In response, the defendants argue that NGE is not a religion at all, and thus the VDOC ban on NGE materials does not run afoul of the First Amendment. Drawing all inferences in favor of Johnson, as the court is required to do on a motion for summary judgment,[4] the court finds that the defendants have not disclosed sufficient, particularized facts for the court to make an independent assessment of reasonableness of the VDOC's determination that NGE is an STG required by both the First Amendment and RLUIPA.

### A.

The First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. CONST. amend. I. The First Amendment applies to the states by virtue of its incorporation into the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296, 303 (1940). However, regulations issued by prisons are not subject to the "inflexible strict

---

[3] In order to prevail under § 1983, a plaintiff "must show, first, that he was deprived of a right secured by the constitution or laws of the United States, and second, that the defendant acted under color of state law." Connor v. Donnelly, 42 F.3d 220, 223 (4th Cir. 1994) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

[4] Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2). The party moving for summary judgment bears the burden of informing the court of the basis for its motion, and identifying those parts of the record which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing a summary judgment motion under Rule 56, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

scrutiny analysis" that would normally apply outside of the prison context. Turner v. Safley, 482 U.S. 78, 89 (1987). Instead, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. In evaluating whether a matter is reasonably related to a legitimate penological interest, the Supreme Court in Turner v. Safley, 482 U.S. 78 (1987), has instructed courts to examine four factors: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) whether "alternative means of exercising the right" remain open to the prison inmates; (3) the impact that an accommodation of the asserted constitutional right will have on "guards, other inmates, and the allocation of prison resources generally;" and (4) the "absence of ready alternatives" available to prison administrators. Id. at 89-91 (internal quotation marks omitted).

Like the Magistrate Judge, the court assumes that NGE constitutes a religion for purposes of summary judgment. This is consistent with the approach taken by the Fourth Circuit and other courts that have addressed this issue. See In re Long Term Admin. Segregation of Inmates Designated as Five Percenters ("Five Percenters"), 174 F.3d 464, 468 (4th Cir. 1999); see also Ciempa v. Jones, 2010 WL 3368990, at *12 (N.D. Okla. Aug. 23, 2010); Holley v. Johnson, 2010 WL 2640328, at *2 (W.D. Va. June 30, 2010). However, the prison officials's designation of NGE as an STG and the ban on the possession of NGE materials do not violate the First Amendment if those regulations survive scrutiny under the Turner factors. Turner, 482 U.S. at 89. While all justifiable inferences must be drawn in Johnson's favor, the court must also accord deference to the professional judgment of prison authorities. Beard v. Banks, 548 U.S. 521, 529-30 (2006); Five Percenters, 174 F.3d at 468.

Johnson's principal objection to the Report and Recommendation is that NGE has not been correctly labeled as a gang or an STG. Therefore, Johnson argues, the VDOC lacks a "legitimate penological interest" in banning all NGE materials under <u>Turner</u>, because NGE is not, in fact, a dangerous group at all. Johnson stresses that: NGE is a peaceful organization; NGE materials themselves do not incite violence; Johnson himself has no record of institutional violence; and the VDOC's explanation that its confiscation policy is content neutral is at odds with its accusations that NGE is a black supremacist group.

In response, the defendants rely principally on Clore's affidavit stating that NGE members have been "disruptive to the safe, secure, and orderly operation of VDOC facilities on more than one occasion. They have participated in work stoppages and small riots, have threatened staff, have recruited other offenders for their gang and have taken over authorized religious services at prisons." (Defs.' Mot., Ex. I ¶ 9.) Therefore, the defendants argue that the VDOC's decision to designate NGE as an STG furthers the prison system's legitimate interest in safety and security.

The court finds that Clore's affidavit lacks sufficient specificity for the court to meaningfully assess the reasonableness of the VDOC's decision to classify NGE as an STG. Clore makes general, conclusory allegations that NGE members have posed a threat to prison security on numerous occasions, but fails to identify even a single such occasion. At a more basic level, the court needs a reliable marker to understand how the VDOC distinguishes a threat group from a religious group with some extremist members.

State prison officials are undoubtedly entitled to considerable deference from federal courts reviewing decisions relating to prison administration. <u>Turner</u>, 482 U.S. at 85. Even in the

First Amendment context, it is inappropriate for a court to "'substitute [its] judgment on . . . difficult and sensitive matters of institutional administration' . . . for the determinations of those charged with the formidable task of running a prison." O'Lone v. Estate of Shabazz, 482 U.S. 342, 353 (1987) (quoting Block v. Rutherford, 468 U.S. 576, 588 (1984)); see also Five Percenters, 174 F.3d at 470 ("The question is not whether [the administrator's] conclusion was indisputably correct, but whether his conclusion was rational and therefore entitled to deference."). Indeed, applying this level of deference, on more fully developed factual records, other courts have upheld the designation of NGE as an STG. [5]

However, the contentions of prison officials in each of those cases were supported by specific examples of NGE members engaging in violent and dangerous behavior and acting in concert with one another to achieve unlawful ends.[6] This kind of specific factual support for the determination that NGE is an STG has not been disclosed to the court here.[7] While the prison

---

[5] See, e.g., Fraise v. Terhune, 283 F.3d 506, 512-13 (3d Cir. 2002) (Alito, J.) (describing several instances of violent conduct by NGE members, including a plot by 30 prisoners to assault prison guards because of prison officials' decision to deny NGE recognition as a religious group); Five Percenters, 174 F.3d at 469-70 (describing three serious acts of violence by imprisoned NGE members and upholding the classification of NGE as an STG by prison officials).

[6] Further, a court cannot simply take judicial notice of the factual findings made by other courts in other cases unless those facts are undisputed in the current case. See, e.g., Nolte v. Capital One Fin. Corp., 390 F.3d 311, 317 n.1 (4th Cir. 2004) (citing FED. R. EVID. 201(b)). At several points in Johnson's objections to the Report and Recommendation, Johnson attempts to distinguish his case from those that have come before it. (E.g., Pl.'s Objections 7.)

[7] The court also takes note of the fact that this is not the first time the sufficiency of the factual allegations contained in an affidavit submitted by Clore has been questioned. In Versatile v. Johnson, 2009 WL 5206437 (E.D. Va. Dec. 31, 2009), Clore submitted a similar affidavit in a case also questioning whether NGE was properly classified as an STG. In that case, Clore failed to certify that the affidavit was based on personal knowledge, which prompted the district court to deny the prison officials summary judgment. Id. at *5. Clore has corrected that error in his

officials' decisions are entitled to deference, the court is mindful that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner, 482 U.S. at 84. "Where fundamental claims of religious freedom are at stake . . . [the court] must searchingly examine the interests that the State seeks to promote." Wisconsin v. Yoder, 406 U.S. 205, 221 (1972). This is particularly true when the justification for an alleged deprivation of those rights is a general statement that other NGE members have committed actions which have undermined the safety of a prison system. Such generalized factual allegations could arguably be applied to any number of religious groups with a few extremist or violent members or claimed members. In short, without specific factual support for the VDOC's determinations, the court lacks the necessary basis to meaningfully apply Turner's four factors.

For these reasons, all of the defendants' motions for summary judgment as to Johnson's First Amendment claim are denied, except as to defendant Price. The Magistrate Judge recommended that the court grant Price's motion for summary judgment on Johnson's First Amendment claim due to Price's lack of involvement in the events giving rise to this claim, and Johnson does not object. Therefore, the court grants Price's motion for summary judgment on this claim.

**B.**

Johnson also claims that his religious rights under RLUIPA have been violated by the NGE's classification as an STG and the related ban on NGE materials. RLUIPA provides that:

---

affidavit submitted to this court. The Versatile court also noted that Clore's failure to identify the specific instances of misconduct by NGE members served as an alternative basis for the court's denial of summary judgment in that case. Id. For the reasons stated in Part II.A, the court agrees with the reasoning of the Versatile court with respect to Clore's affidavit.

10

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that the imposition of the burden on that person is . . . (1) in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that governmental interest.

42 U.S.C. § 2000cc-1(a); see also Lovelace v. Lee, 472 F.3d 174, 185 (4th Cir. 2006). Although Congress invoked the language of strict scrutiny when enacting RLUIPA, Congress anticipated that courts would apply this standard with due deference to prison administrators. Cutter v. Williamson, 544 U.S. 709, 723 (2005) (citing RLUIPA's legislative history). However, while courts must pay deference to the judgments of prison administrators, a court should not "rubber stamp or mechanically accept" the judgments of those administrators. Lovelace, 427 F.3d at 190.

Assuming, *arguendo*, that the VDOC's regulations constitute a substantial burden on the exercise of Johnson's religion, the VDOC has not sufficiently disclosed, as the court concluded concerning Johnson's First Amendment claim, the factual details of its reasoning regarding the STG determination for the court to meaningfully assess whether the VDOC has a "compelling" interest in banning NGE materials. Because the defendants have yet to demonstrate with the requisite degree of specificity that the VDOC's regulations satisfy this critical component of the RLUIPA analysis, the court denies all defendants' motions for summary judgment on Johnson's RLUIPA claim, except Price's. Price's motion is granted for the same reasons noted in Part II.A.

### III.

Johnson claims that the defendants' actions have violated Johnson's right to equal protection under the Fourteenth Amendment on two grounds. First, Johnson argues that the defendants confiscated Johnson's compact disc containing NGE symbols while allowing another inmate to keep the same compact disc, and second, Johnson contends that the defendants permit

11

members of other religious groups to possess materials that are similar in content to the banned NGE materials. After reviewing the filings, the court fully adopts the analysis and recommendation of the Magistrate Judge and grants the defendants' motions for summary judgment on the first claim. However, the court finds that the second claim requires the same kind of factual development needed for Johnson's First Amendment and RLUIPA claims.

To establish an equal protection claim, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). The Magistrate Judge found that Johnson's second equal protection claim, that members of other groups are allowed to possess materials similar in content to those issued by NGE, fails because Johnson has failed to allege that those other groups were also designated as STGs, and therefore they were not similarly situated to NGE. In response, Johnson objects on the ground that NGE has not been appropriately classified as an STG.

As noted previously, the defendants have not provided sufficient detailed information for the court to examine whether NGE has been properly categorized as an STG. If NGE is not properly categorized as such, then there may be a genuine issue of material fact regarding whether NGE is similarly situated to other groups that the VDOC does not classify as STGs. Accordingly, the court denies the defendants' motions for summary judgment, except as to defendant Price, on Johnson's equal protection claim relating to the alleged different treatment afforded to materials issued by other religious groups. Price's motion is granted for the same reasons noted in Part II.A.

## IV.

Johnson alleges several violations of his due process rights under the Fourteenth Amendment. The court will not belabor those claims here, because the court concludes that the Magistrate Judge's report resolved them appropriately. Accordingly, the court adopts the Magistrate Judge's Report and Recommendation with respect to Johnson's due process claims.[8]

## V.

For the reasons stated above, the court adopts the recommendation of the Magistrate Judge in part, and resubmits it in part for an evidentiary hearing. The court denies the motions of all the defendants, except Price, as to Johnson's First Amendment and RLUIPA claims, as well as the single equal protection claim discussed in Part III. The court grants the defendants' remaining motions to dismiss or for summary judgment as to all remaining claims.

**ENTER:** This 30th day of September, 2010.

UNITED STATES DISTRICT JUDGE

---

[8] In addition to the analysis contained in the Magistrate Judge's report, the court offers an alternative rationale regarding the rejection of Johnson's due process claim stemming from the confiscation of Johnson's compact disc. While Johnson alleges he was not able to return the disc after the defendants destroyed its packaging, Johnson acknowledges that officials gave him the opportunity to send the disc home. (Pl.'s Objections 19.) Thus, Johnson still retained control and ownership of the disc, he just could not possess it in his cell. The mere deprivation of *possession* of property by a prisoner does not implicate a due process interest. See, e.g., Faust v. Parke, 1997 WL 284598, at *1 (7th Cir. May 22, 1997); Williams v. Meese, 926 4.2d 994, 998 (10th Cir. 1991). Therefore, regardless of whether the disc was properly considered contraband, the officials did not deprive Johnson of his due process property interest in the disc.