CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUN 22 2011
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **THEOTIS T. JOHNSON,** | ) |
| | ) Civil Action No. 7:09cv00300 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| **JOHN JABE, et al.,** | ) |
| | ) By: Samuel G. Wilson |
| Defendants. | ) United States District Judge |

Plaintiff, Theotis T. Johnson, also known as Prince Just Foundation Allah ("Johnson"), an inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983. The court has jurisdiction over this case pursuant to 28 U.S.C. § 1343. Johnson alleges that Virginia Department of Corrections ("VDOC") officers John Jabe, Larry Huffman, R.C. Mathena, F. Bailey, Sgt. M. Hattfield, T. Higgins, D. Vass, Kathleen Bassett, and K. Price (collectively, "defendants") violated Johnson's rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.*, as well as his rights to due process and equal protection under the Fourteenth Amendment. The defendants moved for summary judgment, and the court referred their motions to the United States Magistrate Judge for a report and recommendation. Relying principally on the defendants' contention that Johnson's purported religion, The Nation of Gods and Earths ("NGE"),[1] is permissibly classified as a gang, the Magistrate Judge recommended that the court grant the defendants' motions for summary judgment. The court found the Magistrate Judge's report to be both thoughtful and thorough, but found that the defendants had not sufficiently particularized the evidence they relied on to support the designation of NGE as a gang, given the ramifications of designating an

---

[1] Members of NGE are also known as "Five Percenters," and for the purposes of this opinion the court uses these terms interchangeably.

organization as a gang.[2] Having received supplemental evidence from the defendants addressing this issue, the court now adopts the Magistrate Judge's report as supplemented by the uncontradicted facts detailed in this opinion. Accordingly, the court grants the defendants' motion for summary judgment as to all of Johnson's remaining claims.

**I.**

Johnson's claims stem from actions taken by VDOC officials in late 2007.[3] Specifically, he alleges that prison officials violated his rights under the First Amendment and RLUIPA by confiscating a compact disc, a booklet, and written materials containing NGE logos and teachings. Johnson also claims that other religions, such as the Nation of Islam, are allowed to possess religious texts which are substantially similar to those followed by members of NGE, and that this disparate treatment violates the Equal Protection Clause of the Fourteenth Amendment.

The defendants moved for summary judgment on these claims on the ground that NGE's history of violence and disruption in prisons in Virginia and throughout the country warranted the VDOC's designation of the group as a gang, and that the VDOC has a compelling interest in restricting inmates' access to gang materials. This court denied the defendants' motions as to Johnson's First Amendment, RLUIPA, and equal protection claims, finding that the defendants had not explained the factual basis for the VDOC's decision to designate NGE as a gang "with sufficient specificity for the court to meaningfully assess the reasonableness of the VDOC's decision." Johnson v. Jabe, 2010 WL 3835207, at *4 (W.D. Va. Sept. 30, 2010). The Magistrate Judge then instructed the defendants to submit additional information regarding the decision to

---

[2] The court did adopt the report's recommendation that Johnson's due process claims and his claims against defendant Price be dismissed. Johnson v. Jabe, 2010 WL 3835207, at *6 (W.D. Va. Sept. 30, 2010).
[3] The court provided a detailed recitation of the facts underpinning Johnson's claims in its prior opinion in Johnson, 2010 WL 3835207, and thus reiterates only those facts salient to his remaining claims and the defendants' supplemental motion for summary judgment.

2

designate NGE as a gang, permitted Johnson to conduct limited discovery, and the defendants filed a supplemental motion for summary judgment, setting forth in greater detail the facts that led to their decision.

Much of the new evidence submitted by the defendants comes in the form of an affidavit by the Director of the VDOC, Gene Johnson ("Director Johnson"). Director Johnson participated in the 1996 decision to designate NGE as a gang and place restrictions on their activities in Virginia prisons. He notes that there has not been a blanket ban placed on issues of *The Five Percenter*, a NGE publication and the subject of one of the plaintiff's claims; instead, each issue is reviewed individually by the VDOC's Publication Review Committee for gang-related content. (Johnson Aff. ¶ 10.) Other documents the plaintiff seeks to possess, such as Supreme Mathematics, the Supreme Alphabets, and the Book of Knowledge/120 degrees are not permitted, because these are documents that are handwritten by prisoners often containing hidden messages or codes, and as such they are nearly impossible for prison officials to monitor. (Id. ¶¶ 11-12.) Merely possessing these documents identifies a prisoner as a member of NGE and demonstrates that prisoner's dedication to the group. (Id. ¶ 12.)

Director Johnson's affidavit also recounts the factual findings made by the U.S. District Court for the Eastern District of Virginia in a previous case, Coward v. Angelone, No. 3:00-CV-240 (E.D. Va. Sept. 25, 2001), regarding the basis for NGE's classification as a gang.[4] According to Director Johnson, the court in Coward relied on his testimony in making its factual findings, and that opinion accurately recounts the factors that led to the VDOC's decision to classify NGE as a gang. (Johnson Aff. ¶¶ 4-5.) The opinion notes that the Five Percenters have a history of violent and disruptive behavior, including incidents where members of the group:

---

[4] In that case, the Eastern District of Virginia concluded that the VDOC's policies regarding NGE did not violate the First Amendment.

3

attacked a corrections officer at the King Mountain correctional facility; engaged in a disturbance that necessitated the use of a strike force against a group of Five Percenters before VDOC officials could regain control; staged a riot in a South Carolina prison; and took over a housing unit in a New Jersey facility. (Id., Ex. B. at 2.) The U.S. District Court for the Eastern District of Virginia also noted that two studies, one by a VDOC consultant and another by the National Institute of Corrections, identified Five Percenters in Virginia prisons as a threat group. (Id.) In order to make it more difficult for the Five Percenters to organize and plan their "assaults, disturbances, drug trafficking, and other unauthorized activities," the VDOC designated the group as a gang and placed restrictions on their ability to congregate and communicate. (Id. ¶ 3.) Director Johnson believes these restrictions have limited NGE's ability to engage in disruptive behavior over the years. (Id. ¶ 6.)

Gary Clore, the manager of the VDOC's Gang Management Unit, also submitted a supplemental affidavit in support of the defendants' motion. Clore reiterates that Five Percenters have been involved in disruptive incidents in VDOC facilities, including an assault on a guard at the Red Onion State Prison, (Id. ¶ 11,) and a group demonstration at Sussex II State Prison. (Id. ¶ 18.) At that same prison, about 50 Five Percenters took over Rastafarian religious services during one incident. (Id. ¶ 17.) While working in VDOC institutions in the early 1990's, Clore supervised Five Percenter meetings, and observed them "march[ing] and participat[ing] in exercise drills similar to military drills. They would practice defensive tactics on the recreation yard. . . . [I]t was evident that there was a hierarchical structure similar to the military (Captains, Lieutenants, Sergeant at Arms, etc.)." (Id. ¶ 10.) Clore notes that the VDOC officials have observed NGE members communicating with each other in writing using hidden codes, and the "religious" books and materials that the plaintiff seeks access to in this suit often serve as the

4

source material for these codes. (Id. ¶¶ 9, 14.)  Clore notes that there are over 1,000 known members of NGE in VDOC facilities, and the size of the VDOC's NGE population makes it impossible for the VDOC to adopt less restrictive means of controlling their activities. (Id. ¶ 15.)

## II.

The Magistrate Judge's report recommended that the court grant the defendants' motion for summary judgment on Johnson's First Amendment and RLUIPA claims because: the VDOC had reasonably determined that NGE constituted a gang, the VDOC had a compelling interest in restricting gang activities, and the institutional ban on NGE materials was the least restrictive means of furthering this interest. Johnson v. Jabe, 2010 WL 3855217, at *4-8 (W.D. Va. Aug. 24, 2010). The Magistrate Judge also recommended granting summary judgment on Johnson's equal protection claims, noting that NGE's designation as a gang meant that NGE was not "similarly situated" to the groups cited by Johnson that received different treatment. Having reviewed the defendants' supplemental submissions and made additional factual findings, the court now finds that its concerns over the "reasonableness of the VDOC's determination" that NGE is a gang. Johnson, 2010 WL 3835207, at *3, have been adequately addressed. As the court agrees with the Magistrate Judge's report and recommendation as supplemented by the VDOC's additional factual submissions, the court now adopts that report as supplemented and grants the defendants' motion for summary judgment on Johnson's remaining claims.[5]

---

[5] The court notes that its decision is consistent with those reached by numerous other courts who have dealt with claims involving NGE. See, e.g., In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) (finding that South Carolina's gang policy furthers compelling government interests and that the Five Percenters were properly designated as a gang); Ciempa v. Jones, 745 F. Supp. 2d 1171, 1189-90 (N.D. Okla. 2010) (granting summary judgment against a member of NGE raising First Amendment claims based on a prison's refusal to allow him to possess Five Percenter literature); Holley v. Johnson, 2010 WL 2640328, at *6 (W.D. Va. June 30, 2010) (upholding VDOC ban on Five Percenter literature) Johnson v. Stewart, 2008 WL 828086, at *3-4 (W.D. Mich. Mar. 26, 2008) (same); Talbert v. Jabe, 2007 WL 3339314, at *5-6 (W.D. Va. Nov. 8, 2007) (upholding the VDOC's designation of NGE as a gang). These courts often refer to gangs as "security threat groups," which was the VDOC's original term for gangs that operated inside prison facilities. Director Johnson notes that the VDOC now simply refers to these groups as "gangs."

5

**ENTER**: June 22, 2011.

_____
UNITED STATES DISTRICT JUDGE